Revised November 13, 2001

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 00-50222**

_____

**JOSE SANTELLAN, SR.,**

**Petitioner-Appellee-Cross-Appellant,**

**versus**

**JANIE COCKRELL, Director, Texas Department of Criminal Justice,
Institutional Division,**

**Respondent-Appellant-Cross-Appellee.**

_____

**Appeals from the United States District Court
for the Western District of Texas**
_____

October 17, 2001

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The district court granted a writ of habeas corpus to Jose Santellan, a death-sentenced Texas prisoner, after it concluded that no rational jury could find that he murdered his ex-girlfriend while in the course of attempted kidnapping. The federal court also concluded that the Texas Court of Criminal Appeals affirmed Santellan's conviction on a factual basis sufficiently different from that espoused by the state at trial as

to deny due process. Based on the appropriately deferential (AEDPA) standard of review of the state court's decision, we hold that the state court did not unreasonably apply clearly established federal law and reverse the district court's judgment. We also reject Santellan's cross-appeal urging an ineffective assistance of counsel claim.

**BACKGROUND**

On the afternoon of August 22, 1993, Santellan confronted his former girlfriend, Yolanda Garza, as she left work at the Hill Country Memorial Hospital in Fredericksburg, Texas. Garza had been walking through the parking lot with a co-worker, Norma Hoffman. As the two women parted, Santellan approached Garza; he might have emerged from behind some dumpsters or a wall at the end of the parking lot. Garza veered from her previous course along with Santellan and walked away from her automobile. Hoffman watched Garza and Santellan talking, but at a distance of 70 feet, she could not understand what was being said or whether the two were arguing. The last time Hoffman saw Yolanda standing, she was about five feet from Santellan and about 20 feet from where she had met him.

Garza suddenly screamed, "Think of my kids!" Santellan was now standing over her with his pistol drawn. Hoffman heard two shots and saw Santellan shake his gun as if to dislodge a jam, but

2

she acknowledged that other shots might have been fired before she took notice. Santellan continued to stand over Yolanda's body.

At about this time, a second eye-witness, hospital house-keeper Guadalupe Noriega, entered the parking lot. She saw Garza bleeding and motionless and rushed back into the hospital to seek help. Returning to the parking lot, Noriega saw Santellan's car parked next to the victim as he loaded her into the passenger seat, put in her backpack and drove away.

Santellan later confessed that he absconded with Garza's dying body because he "just wanted to get away and be with her and spend some time together." Santellan drove west for several hours before checking into a motel in Camp Wood, Texas. He carried Garza's body into the hotel room. During the next night and day, Santellan engaged in various sex acts with the corpse. He poured perfume on the body to alleviate the growing stench of decomposition. He also drafted several letters to family members, asking their forgiveness for the murder. The police found and arrested Santellan at the motel on August 24th. Santellan confessed voluntarily.

In April 1994, Santellan was indicted for the capital murder of Yolanda Garza while in the course of attempting to kidnap her. He was tried, convicted and sentenced to death a year later. The Texas Court of Criminal Appeals affirmed his conviction. Santellan v. Texas, 939 S.W.2d 155 (Tex. Crim. App. 1997).

3

Santellan then unsuccessfully sought habeas corpus relief in state court.

His quest for habeas relief prevailed, however, in the federal district court. The district court found the evidence constitutionally insufficient to support a conviction for murder in the course of attempted kidnapping, and it refused to defer to the state court's decisions. The federal court first rejected the state's principal theory of the crime, as it concluded that, "No rational jury could have found beyond a reasonable doubt that [Santellan] attempted to abduct or restrain the victim by use of deadly force when he approached the victim in the parking lot." Second, the federal court held that the Texas Court of Criminal Appeals unreasonably affirmed the conviction on a factual and legal basis that the state had "disavowed" before the jury; the court considered this alleged modification of the basis for the verdict to violate Santellan's due process rights. Finally, while the court agreed with Santellan that his attorney rendered unconstitutionally deficient performance by not investigating the petitioner's possible organic brain damage, it found that this error did not prejudice Santellan.[1]

---

[1] The district court rejected several other issues raised by Santellan, but he has not appealed them.

4

The State has appealed from the grant of habeas corpus relief, and Santellan appeals the single claim of defective attorney performance.

## Standard of Review

The federal courts' review of this habeas petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §§ 2241 et seq. See Lindh v. Murphy, 521 U.S. 320, 335, 117 S.Ct. 2059, 2067 (1997) (applying AEDPA to all habeas petitions filed on or after April 24, 1996). Under AEDPA, a federal court may grant a prisoner's petition only where the state court's "decision" was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Pursuant to the Supreme Court's recent interpretive decisions, the "unreasonable application" inquiry asks whether a state court's application of clearly established law was "objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 1521-22 (2000). The "most important point" of the Williams decision is that an "incorrect application of federal law is not necessarily unreasonable." Williams, 529 U.S. at 411-12, 120 S.Ct. at 1522-23. We consider, then, whether the Texas courts'

5

"decisions" applying long-established constitutional law principles were "objectively unreasonable."

The key to this case is the federal district court's revisiting of the evidence because it believed that the Texas Court of Criminal Appeals should not have affirmed Santellan's capital murder conviction on a factual theory different from the theory principally advocated by the State at trial. Santellan never denied that he murdered Garza, but he challenged the enhancement to capital murder based on attempted kidnapping, and he contended that his acts did not meet state law criteria for the enhancement crime. The federal district court agreed for two reasons. In the court's view, not only had the State "disavowed" the theory adopted by the Court of Criminal Appeals, but that court's analysis implicitly rejected the State's approach. The switching and contradiction of theories violated the due process clause, according to the district court. And in any event, neither theory of attempted kidnapping was supported by constitutionally sufficient evidence. We shall address the insufficiency point first.

## Sufficiency of the Evidence

In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

6

<u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Whether the appellate court views the evidence as sufficient is irrelevant. <u>Jackson</u>, 443 U.S. at 318-19, 99 S.Ct. at 2789. The <u>Jackson</u> inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402, 113 S.Ct. 853, 861 (1993). The Texas Court of Criminal Appeals invoked, recited and applied the <u>Jackson</u> standard on Santellan's direct appeal. <u>Santellan</u>, 939 S.W.2d at 160. While its decision was thus not "contrary to clearly established Federal law", it could be an "unreasonable application" thereof. <u>Williams</u>, <u>supra</u> at 529 U.S. at 413, 120 S.Ct. at 1523. The federal district court declared, after an independent review of the evidence that ignored circumstantial inferences and, by its selectivity, did not view the evidence in the light most favorable to the verdict, that the evidence of attempted kidnapping was constitutionally insufficient and, therefore, the state court's contrary determination was incorrect. We disagree with the district court's conclusion.

To begin with, the court appeared to interpret AEDPA to authorize habeas relief solely because it found the state court's reasoning unsatisfactory. The plain language of AEDPA, as well as the rulings of our sister circuits, renders this reasoning

7

untenable.  AEDPA authorizes a federal court to grant habeas relief only where a state court's "decision" (a) was contrary to, or involves a clearly unreasonable application of federal law, or (b) was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(1), (2).  The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.  As the Second Circuit recently noted, even where a state court made a mistake (in relying on an interrogating officer's subjective state of mind as part of a Miranda inquiry), "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers." Cruz v. Miller, 255 F.3d 77, 86 (2d Cir. 2001).  Other circuit courts likewise focus on the result of a state court's consideration of a prisoner's claim. Long v. Humphrey, 184 F.3d 758, 760-61 (8th Cir. 1999); Matteo v. Superintendent, 171 F.3d 877, 891 (3d Cir. 1999) (en banc); Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999) (". . . we cannot grant relief unless the state court's result is legally or factually unreasonable").  This approach is consistent with the federal courts' view that if a state court denies a prisoner's claim without reasoning of any sort, our authority under AEDPA is still limited to determining the reasonableness of the ultimate decision. See, e.g., Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), cert denied, Bell v. Beck, 2001 WL 379029 (2001);

8

<u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001). It would be odd to require a less deferential approach to reasonableness in cases where the state courts attempted to articulate reasons for their decisions than in those where they did not.

In this case, the foregoing authorities dictate that while it is not irrelevant that the Texas Court of Criminal Appeals appears to have affirmed Santellan's conviction on a theory of attempted kidnapping that differs from the State's preferred theory at trial, because the inconsistency may shed light on the sufficiency of either theory, that is not the whole story. Instead, we focus, as does the <u>Jackson</u> standard itself, on what inferences could have been drawn by any rational jury. The elements of the offense and the facts and inferences supporting the verdict must be considered.

Santellan was charged with capital murder by intentionally committing murder in the course of attempting to commit kidnapping. <u>See</u> Tex. Penal Code Ann. § 19.03(a)(2). The State had to prove beyond a reasonable doubt that he had the specific intent to commit kidnapping and that he committed an act amounting to more than mere preparation for kidnapping Garza. <u>See</u> Tex. Penal Code Ann. § 15.01 (defining criminal attempt). In Texas, kidnapping is the intentional or knowing abduction of another person. Tex. Penal Code. Ann. § 20.03. To "abduct" means

9

to restrain a person with the intent to prevent his liberation by either (1) secreting or holding her in a place where she is not likely to be found or (2) using or threatening to use deadly force. Tex. Penal Code Ann. § 20.01(2). Under the law of criminal attempt, the Texas Court of Criminal Appeals has held that "the criminal act element of the attempted offense entailed proof beyond a reasonable doubt that [Santellan] committed an act amounting to more than mere preparation for the restraint of the victim." Santellan, 939 S.W.2d at 162. "Restraint" is defined as a substantial interference with the victim's liberty through the use of deadly force, intimidation, or deception. Tex. Penal Code § 20.01(1). The assailant need not, however, have restrained the victim for any certain period of time. Sanders v. State, 605 S.W.2d 613, 614 (Tex. Crim. App. 1980).

That Santellan had the specific intent to kidnap Garza before or during the commission of the murder was proved by the State, was carefully explained by the Texas Court of Criminal Appeals, was implicitly confirmed by the federal district court, and is not challenged by Santellan on appeal. Nevertheless, a recitation of facts that proved Santellan's intent is helpful in explaining his actions toward Garza as he committed the crime. In his confession, Santellan admitted his desire to "get away and be with [Yolanda] and spend some time together." Rather than fleeing

10

the scene after he shot her, he lingered, bringing his car around to collect her body and backpack. Santellan stated at one point that Garza may have been alive when he placed her in his car. He made no effort to hide or dispose of the evidence. Santellan's bizarre treatment of Garza's corpse, including his cleaning it, dressing it in his underwear, and repeatedly engaging in sexual relations with it, evinces a desire to possess or control the victim. He admitted his sexual abuse of her corpse was motivated by a desire to "show how much I really loved her." Although Santellan also confessed that he went to the hospital intending to "say goodbye", a reasonable jury could conclude that Santellan's intent in going armed to the hospital that day was to force Garza to stay with him until she reciprocated his affections.

The parties diverge over the basis for the jury's conclusion that Santellan committed an act amounting to more than mere preparation for the restraint of Garza. Santellan asserts and the district court ruled that it is impossible to conclude beyond a reasonable doubt that Santellan "attempted to abduct or restrain the victim by use of deadly force when he approached the victim in the parking lot." As stated, we disagree. The prosecution showed that Santellan drove to the hospital, just as Garza was leaving work, for the confessed purpose of saying goodbye. But he brought along a loaded handgun, emerged from behind some concealment on the

11

edge of the parking lot and intercepted Garza after she had parted company with Norma Hoffman. Santellan diverted Garza from the path to her car and led her away from her car. He began talking to her. Santellan did not like the result of this conversation and[2], in response, produced his pistol. He emptied his clip, shooting Garza four times, but there could have been a pause between the intervals of shooting, since Hoffman heard two shots and then saw Santellan shake the pistol.

All of these facts are undisputed. Given Santellan's specific intent to kidnap Garza, this series of acts permitted a reasonable jury to find more than "mere preparation" to restrain Garza through the use of deadly force, intimidation, or deception. Santellan armed himself, stalked his estranged ex-girlfriend through the parking lot, confronted her verbally and prevented her from reaching her car, brandished his pistol, and ultimately shot her. Garza knew she was threatened – why else would she have screamed at him in fear? Indeed, taking into account that Santellan was mentally competent,[3] a failed kidnapping coherently

---

[2]     Santellan's confession does not detail the specifics of this conversation, but it made him angry: "Yolanda became abusive, my mind went blank, I pulled out a handgun with a full clip."

[3]     The psychiatric report prepared by Dr. Lee Simes in 1994 concluded that while Santellan was mentally ill and suffering from a depressive disorder, intermittent explosive disorder, alcohol abuse, and personality disorder, he was not mentally retarded and was competent to stand trial and assist in his own defense.

12

explains the "diversion of path" scenario pressed by the State at trial.

The district court's contrary conclusion rests on two erroneous premises. First, the court simply ignored Yolanda's dreadful scream when it concluded that no evidence supported the theory that Santellan brandished his pistol at her or attempted to restrain her liberty with the threat of deadly force. The court relied solely on the petitioner's, not the State's, evidence in this regard. Second, the district court relied on the fact that the Court of Criminal Appeals did not expressly affirm the constitutional sufficiency of evidence on this theory, but instead held that Garza's heart might still have been beating when Santellan placed her in his car. The district court inferred that the Court of Criminal Appeals also rejected the "diversion of path" theory.

Whether the Court of Criminal Appeals rejected the "diversion of path" theory is not entirely clear, but is also irrelevant to the ultimate question under Jackson. As we have noted, the test in Jackson is whether any rational jury could have found the elements of guilt beyond a reasonable doubt. The "diversion of path" theory was sufficiently established. The facts may be interpreted in other ways, with varying levels of evidentiary support. The Court of Criminal Appeals affirmed on the

13

basis that Garza may have been "still alive" because forensic evidence suggested her heart may have been beating after Santellan loaded her into his car. The State alternatively hypothesizes that Santellan struck Garza before shooting her, thereby knocking her to the ground and effecting a restraint. Finally, Santellan may have fired the fatal shot after Garza was already in his car, since bullet casings were found there. Santellan urges that none of the alternative theories of attempted kidnapping satisfies the <u>Jackson</u> standard.[4]

Like the district court, Santellan recognizes that he must defeat all of the theories of attempted kidnapping in order to obtain relief. The Supreme Court has ruled that where a jury is given the option of choosing between factually adequate and factually inadequate theories of guilt, jurors "are well equipped to analyze the evidence" and can be counted upon to base their verdict upon the factually adequate theory. <u>See</u> <u>Griffin v. United States</u>, 502 U.S. 46, 59, 112 S.Ct. 466, 474, 116 L.Ed.2d 371 (1991). In <u>Griffin</u>, the Supreme Court refused to overturn a general guilty verdict because one of the possible bases of

---

[4] We have no need to reach Santellan's additional contention that the "still alive" and "fatal shot in the car" theories allege not an attempted, but a completed kidnapping under Texas law, which introduced a fatal variance. <u>See</u> <u>United States v. Miller</u>, 471 U.S. 130, 105 S.Ct. 1811 (1985); <u>Stirone v. United States</u>, 361 U.S. 212, 80 S.Ct. 270 (1960).

conviction was unsupported by sufficient evidence. As an example, the Court noted that invalidating a conviction on evidentiary grounds was not appropriate if "an indictment charg[ed] murder by shooting or drowning, where the evidence of drowning proves inadequate." 502 U.S. at 56, 112 S.Ct. at 472. Thus, the possible insufficiency of the evidence to prove more than mere preparation for restraint under one or more theories is irrelevant, where there remains a sufficiently supported theory of guilt. As the Seventh Circuit has put it:

> It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance-- remote, it seems to us--that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.

United States v. Townsend, 924 F.2d 1385, 1414 (7th Cir. 1991).

Because the diversion of path theory of attempted kidnapping is factually adequate, this portion of Santellan's argument fails. The Court of Criminal Appeals' "decision" upholding the constitutional sufficiency of the evidence of attempted kidnapping was not unreasonable.[5]

---

[5] Santellan alternatively argues that, as applied in this case, the Texas capital punishment statute is unconstitutional for vagueness and because it does not sufficiently narrow the class of death-eligible defendants. These arguments are meritless. Attempted kidnapping is a statutory aggravating factor that elevates Santellan's crime above the offense of ordinary murder and

15

## Due Process Claim

Santellan, supported by the district court, also argues that the reliance by the prosecution at trial and by the Court of Criminal Appeals on separate theories of attempted kidnapping violated his due process rights and warrants the granting of habeas relief. In support, he points to the Supreme Court's decisions in McCormick v. United States, 500 U.S. 257, 111 S.Ct. 1807 (1991) and Dunn v. United States, 442 U.S. 100, 99 S.Ct. 2190 (1979).

Dunn stands for the proposition that "[t]o uphold a conviction on a charge that was neither alleged in the indictment nor presented to a jury at trial offends the most basic notions of due process." Dunn, 442 U.S. at 106, 99 S.Ct. at 2194. In Dunn, the defendant was indicted, tried, and convicted on the theory that he had lied under oath at a particular proceeding in September 1976. When the appeals court looked at the conviction, however, it

---

narrows the class of crimes to which the d death penalty may attach. See Tex. Penal Code § 19.03; Jurek v. Texas, 428 U.S. 262, 268-72, 96 S.Ct. 2950, 2954-56 (1976); Lowenfield v. Phelps, 484 U.S. 231 at 243-46, 108 S.Ct. 546, 554-55 (1988). The offense of attempted kidnapping requires both specific intent and more than mere preparation to "restrain" the victim. Santellan's argument ignores the evidence of specific intent to kidnap and the evidence of attempted intimidation and restraint by means of deadly force. As the State observes, not only could a reasonable jury infer both specific intent and the requisite amount of pre-murder restraint, but the evidence of Santellan's specific intent to kidnap Garza distinguishes his case from ordinary murders. It is thus incorrect to assert, as Santellan does, that his capital murder conviction threatens to transform every murder into a death-eligible crime.

16

concluded that the September 1976 proceeding was not within the coverage of the applicable criminal statute, and it chose instead to affirm on the basis of a statement that the defendant had made at an October 1976 proceeding not mentioned in the indictment. The Supreme Court found this to be a due process violation. Similarly, in McCormick, the jury instructions explained that a campaign contribution could be proscribed by the Hobbs Act even where there was no expectation of benefit by the contributor. The Tenth Circuit disagreed, holding that the Hobbs Act required a quid pro quo and listing a seven-factor test for such an arrangement. Rather than remand the case, however, the court affirmed the conviction on this new legal basis, thereby violating due process. McCormick, 500 U.S. at 269-270, 111 S.Ct. at 1814-15.

The present case is readily distinguishable from Dunn and McCormick. The indictment of Santellan alleged attempted kidnapping only in general terms and did not commit the State to prosecuting any one factual theory. Similarly, the jury instructions described the law of kidnapping and criminal attempt in considerable detail, but do not bind the State to a particular interpretation of the facts or theory of attempted kidnaping. In contrast to Dunn, the incident for which Santellan was convicted by the jury--the murder and  attempted kidnaping of Yolanda Garza in Fredericksburg on August 22, 1993--was also definitively the basis

17

of the appellate court's affirmance of his conviction. As distinguished from the federal circuit court in McCormick, the Texas Court of Criminal Appeals did not reinterpret the relevant criminal statute or apply different legal standards than the trial court in Santellan's case. Instead, the court focused on a different interpretation of the facts than that emphasized by the prosecution at trial. Contrary to Santellan's suggestion, the Court of Criminal Appeals did not "disavow" the diversion of path theory of attempted kidnaping, but raised and discussed the theory, albeit somewhat briefly, in its published opinion. Santellan, 939 S.W.2d at 162-63 and 165. Because of the general nature of the indictment and the jury charge, and because the Court of Criminal Appeals affirmed on the basis of the same law and the same ultimate acts that underlay the conviction in the trial court, neither Dunn nor McCormick is applicable to Santellan's case.

The Texas Court of Criminal Appeals did not unreasonably apply federal law in rejecting a due process claim and sustaining Santellan's conviction.

18

### Ineffective Assistance of Counsel Claim

Santellan has challenged on cross-appeal the denial of his habeas claim based on his trial counsel's failure to introduce potentially mitigating psychiatric evidence during the punishment phase of trial. He faults counsel's failure to investigate, prepare, and present mitigating evidence that Santellan suffers from organic brain damage. Had the jury been presented with this evidence, he contends, there is a reasonable probability that he would have received a life sentence rather than death. See Glenn v. Tate, 71 F.3d 1204 (6th Cir. 1995)(holding that trial counsel's failure to present evidence of the defendant's brain damage required reversal of his death sentence).

The standard for ineffective assistance of counsel is well established: Petitioner must show that (1) his counsel's representation was deficient, and (2) that the deficient performance was so serious that it prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1989). For a federal court to grant habeas relief, the state court must have unreasonably applied the Strickland standard. See Williams, 529 U.S. at 413, 120 S.Ct. at 1523. The federal district court held that while the Court of Criminal Appeals unreasonably applied the deficiency prong of Strickland, its conclusion that Santellan suffered no prejudice as a result of this deficient

19

performance was reasonable. Based on the district court's evaluation of the prejudice prong, and expressing no opinion on its decision as to the first prong, we affirm.

Overwhelming evidence illustrated Santellan's history of displaying a violent personality and behavior wholly apart from the kidnapping and murder of Garza. Considering that history in light of the horrific nature of this offense, a reasonable court could conclude that there was no substantial likelihood that the outcome of the punishment phase would have been altered by evidence that he suffered organic brain damage. Under the deferential standard of Section 2254(d), the Texas court did not unreasonably apply the second prong of Strickland to Santellan's case.

## Conclusion

Based on the foregoing discussion, the Texas Court of Criminal Appeals did not unreasonably apply clearly established federal law to Santellan's insufficiency of the evidence, due process or ineffective assistance of counsel claims. Accordingly, the judgment of the district court granting the relief under § 2254 is **REVERSED.**

20