United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 25, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

---

**No. 03-20991**

---

**HOWARD PAUL GUIDRY,**

**Petitioner-Appellee,**

**versus**

**DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**CORRECTIONAL INSTITUTIONS DIVISION,**

**Respondent-Appellant.**

---

**Appeal from the United States District Court**
**for the Southern District of Texas**

---

ON PETITION FOR REHEARING EN BANC

(Opinion 1/14/05, 5th Cir., *Guidry v. Dretke*, 397 F.3d 306)

Before BARKSDALE, GARZA, and DENNIS, Circuit Judges.

PER CURIAM:

Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is **DENIED**. The court having been polled at the request of one of its members, and a majority of the judges who are in active service not having voted in favor (FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is **DENIED**.

The author of the underlying majority opinion, RHESA HAWKINS BARKSDALE, Circuit Judge, offers the following comments regarding

the Dissent to the Denial of Petition for Rehearing En Banc (Dissent to Denial).

Howard Guidry was convicted in Texas state court of murder for remuneration and given the death penalty (death-penalty conviction).  The district court granted conditional habeas relief pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA); our divided panel affirmed.  The majority opinion and dissent from that opinion go into great detail regarding the numerous factual and legal issues surrounding AEDPA's application, including whether the district court abused its discretion in holding an evidentiary hearing.  *Guidry v. Dretke*, 397 F.3d 306 (5th Cir. 2005); *id.* at 331 (Garza, J., dissenting).

Usually, no response is required to a dissent from the denial of en banc review; the underlying panel opinion is answer enough.  This is an exception because the Dissent to Denial is wide of the mark.  The most glaring instance is its reliance on an AEDPA issue that was never raised by the State in contesting the conditional habeas relief:  the interplay of the properly-held evidentiary hearing and 28 U.S.C. § 2254(d)(2) (federal habeas relief to be granted if the state court "decision ... was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*" (emphasis added)).

2

For his death-penalty conviction, Guidry was granted conditional federal habeas relief on his Fifth and Sixth Amendment claims. *Guidry*, 397 F.3d at 309*.* The Dissent to Denial challenges only the majority's holdings on the Fifth Amendment (confession) claim. To understand why en banc review is not compelled for this extremely fact-specific appeal, a far more detailed recitation of the facts is required than is provided by the Dissent to Denial. Of course, the most complete recitation is found in the underlying opinion. *See id.* at 309-18. Although the following recitation is far more complete than that offered by the Dissent to Denial, it only scratches the surface.

On 1 March 1995, Guidry was arrested for bank robbery; in his possession was the gun used to murder Farah Fratta on 9 November 1994. *Id.* at 310. On 7 March 1995, while Guidry was being held on the bank-robbery charge, Detectives Roberts and Hoffman questioned him about Farah Fratta's murder, resulting in his confession. *Id.*

The testimony at the pre-trial hearing on Guidry's motion to suppress the confession provided "sharply contrasting versions of the interrogation leading to the confession". *Id.* Guidry claimed: his robbery-charge attorney had instructed him *not* to discuss anything with anyone; therefore, when interrogated about Farah Fratta's murder, Guidry requested his attorney; after his second request, Detectives Roberts and Hoffman left the room; on

3

returning, they advised Guidry they had contacted his attorney, who had given Guidry permission to answer their questions; and, in reliance on such alleged permission, Guidry confessed. *Id.* at 311.

Guidry's suppression motion claimed his confession was violative of his Fifth Amendment rights. *Id.* at 310. At the 1996 (first) pre-trial hearing on the motion, Gottlieb, an attorney unaffiliated with the Guidry case, testified about a 15 March 1995 conversation in the chambers of a Texas state judge, who was not present. *Id.* at 312-13. Those present for the in-chambers conversation were Gottlieb, Guidry's two attorneys for his murder charge, an assistant district attorney, Detective Roberts, and another detective. *Id.* at 313. According to Gottlieb, while discussing the circumstances under which Guidry had confessed approximately a week earlier, Detective Roberts and the other detective stated that they had talked to Guidry's attorney and obtained his permission for them to talk to Guidry before they took his statement. *Id.* at 313. Gottlieb testified that she and other in-chambers attorneys were shocked that such permission would have been given to a person suspected of capital murder. *Id.*

Detective Roberts, on the other hand, gave inconsistent testimony at the 1996 (first) pre-trial hearing, ultimately testifying that he *did not know* whether Guidry had an attorney, and that he "*never did confirm* if he had an attorney". *Id.* at 311-12 (emphasis in original). As discussed *infra*, a second hearing was

4

held after Guidry's attorneys at the first hearing were allowed to withdraw so they could testify about the in-chambers conversation. As he had done at the first hearing, Detective Roberts gave inconsistent testimony at the 1997 (second) pre-trial hearing. First, he testified that he had "*no knowledge that [Guidry] had an attorney*"; later, he testified that Guidry had told him he had an attorney but never asked to speak with him. *Id.* at 312 (emphasis in original). He also testified that he had *no* recollection of the 15 March in-chambers conversation. *Id.* at 314.

Duerr, Guidry's robbery-charge attorney, testified at the 1996 (first) hearing that he never gave permission for anyone to discuss such matters with Guidry. *Id.* at 313. At this point in the hearing, Guidry's two murder-charge attorneys, who had been present at the in-chambers conversation, moved to withdraw as Guidry's counsel so that they could testify about that conversation; the motion was granted. *Id.* (stating that both attorneys, in addition to Gottlieb, testified at the subsequent 1997 hearing).

The suppression motion was denied orally prior to trial. "Just before doing so, the state court stated that, for purposes of ruling on the admissibility of Guidry's confession, the 15 March in-chambers 'conversation was absolutely meaningless, *except as it relate[d] to credibility.'*" *Id.* at 314 (alteration and emphasis in original). On 27 March 1997, the trial court entered post-verdict written findings of fact and conclusions of law regarding its pre-

5

trial denial of Guidry's suppression motion, but did *not* mention the attorneys' testimony at the two pre-trial evidentiary hearings regarding the in-chambers conversation. *Id.* at 314-15.

On direct appeal, the Texas Court of Criminal Appeals rejected, *inter alia*, Guidry's Fifth Amendment claim, holding "the trial court's findings were sufficiently detailed". *Id.* at 315 (quoting **Guidry v. State**, 9 S.W.3d 133, 142 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 837 (2000)) (internal quotations omitted).

In May 2000, Guidry filed a state habeas petition raising, *inter alia*, his Fifth Amendment claim. *Id.* at 316. Two months later, without an evidentiary hearing, the state habeas trial court adopted verbatim the State's proposed findings of fact and conclusions of law. *Id.* In November 2000, the Texas Court of Criminal Appeals denied habeas relief, ruling that the habeas trial court's findings and conclusions were supported by the record. *Id.*

Guidry filed his federal habeas petition in November 2001, raising, *inter alia*, his Fifth Amendment claim *and requesting an evidentiary hearing*. *Id.* The district court "denied the State's summary judgment motion and ordered an evidentiary hearing for the voluntariness *vel non* of Guidry's confession". *Id.* at 316-17 (detailing the district court's concern about the substantial factual questions pertaining to Guidry's confession, including the state court's failure to evaluate the veracity of the attorneys' testimony as well as the detectives' inconsistent and contradictory

6

testimony). *In district court, the State never objected to the evidentiary hearing's being held.* **Id.** at 317.

At the district court evidentiary hearing, Guidry and the attorneys gave "substantially the same testimony" as at the two state pre-trial hearings. **Id.** On the other hand, Detective Roberts' testimony contained several substantial differences from his state-court testimony. **Id.** For example, he testified *for the first time* that, prior to questioning Guidry, he had contacted an assistant district attorney to seek permission to do so because, based on the length of time Guidry had been in jail on the robbery charge, *Roberts thought Guidry probably had an attorney.* **Id.** at 317-18. As another example, Roberts testified, *again for the first time*, that he recalled the in-chambers conversation; and that, in the conversation, he never told Guidry's then murder-charge attorneys that, during Guidry's interrogation, he had contacted Guidry's robbery-charge attorney. **Id.** at 317.

Based on the evidentiary hearing, the district court ruled that, "pursuant to 28 U.S.C. § 2254(e)(1), Guidry, with the requisite clear and convincing evidence, rebutted the presumption of correctness AEDPA accords to state court determinations of fact". **Id.** at 318. Accordingly, in September 2003, the district court granted conditional habeas relief on, *inter alia*, Guidry's Fifth Amendment claim. **Id.** On appeal, our divided panel held, *inter alia*, that the district court: had not abused its discretion

7

by conducting an evidentiary hearing; and had properly granted conditional habeas relief. *Id.*

## II.

As is often the case, and understandably so, sharply differing views are offered for AEDPA's proper application to a state death-penalty conviction. In this instance, the differences are even more pronounced because the Dissent to Denial paints a picture greatly at odds with what has transpired, including during the appeal for which en banc review has been denied. The Dissent to Denial's most serious defect is its reliance upon an issue, never raised by the State, concerning the interplay of the district court evidentiary hearing and the strictures of 28 U.S.C. § 2254(d)(2) (federal habeas relief proper when the state court "decision ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

## A.

The Dissent to Denial at 2 n.3 acknowledges that it presents "[o]nly a thumbnail sketch" of these complicated facts. Nevertheless, the following five clarifications must be made to that all too brief recitation.

## 1.

Concerning Guidry's confession, the Dissent to Denial's block quote at 3 from the state trial court's factual findings is confusing because the Dissent to Denial does not explain that the

8

events described in that quotation came *after* Guidry claims he was misled by Detectives Roberts and Hoffman. Thus, the Dissent to Denial fails to describe properly the role Detective Roberts played throughout Guidry's interrogation and subsequent confession. *See Guidry*, 397 F.3d at 311 (setting forth Detective Roberts' involvement, according to Guidry).

2.

The Dissent to Denial at 2 states that, after the interrogation at issue, the crucial in-chambers conversation took place "at a later date". That "later date" was a *mere eight days* after Guidry's interrogation and confession. *Guidry*, 397 F.3d at 310. This short interval between the two events is pertinent, because it reflects that the claimed in-chambers comments by Detective Roberts were made soon after Guidry's interrogation.

3.

According to the Dissent to Denial at 2, the in-chambers conversation "could have left the impression that Detective Roberts may have lied about his contacts with Guidry's [bank-robbery] attorney". If the attorneys testified truthfully, then Detective Roberts did indeed lie. *Guidry*, 397 F.3d at 313-14. (On the other hand, to conclude that the attorneys lied is to find that they concocted Guidry's version of the interrogation *before* he testified at the first evidentiary hearing, when two of the attorneys who had

9

participated in the in-chambers conversation were his murder-charge counsel for that subsequent hearing. *Id.*)

4.

The Dissent to Denial at 3 maintains the state habeas court "held that Guidry failed to demonstrate a violation of his Fifth Amendment rights". As the state habeas court ruled, because Guidry's confession claim had been raised on direct appeal, the state habeas court was precluded from considering the issue and, thus, made only *alternative* rulings concerning the confession's admissibility. *Guidry*, 397 F.3d at 316, 325-26; *Gill v. State*, 111 S.W.3d 211, 214 n.1 (Tex.App.-Texarkana 2003) ("The general doctrine ... forbids an application for a writ of habeas corpus after direct appeal has addressed an issue".).

5.

In listing differences between Detective Roberts' testimony at the 1996 and 1997 pre-trial suppression hearings and at the 2002 district court evidentiary hearing, the Dissent to Denial at 4 fails to note two of the most, if not *the* most, important changes in that testimony. First, in state court, Detective Roberts testified that he *did not know* that Guidry had an attorney; in district court, however, Detective Roberts testified that, prior to questioning Guidry, he had contacted an assistant district attorney to seek permission to question Guidry because, based on Guidry's having been in jail for several days for the bank-robbery charge,

10

*Detective Roberts knew Guidry probably had an attorney*. **Guidry**, 397 F.3d 311-12, 317-18. Second, when testifying at the district court evidentiary hearing, Detective Roberts stated, *for the first time*, that he *did recall* the 15 March 1995 in-chambers conversation. **Id.** at 317.

## B.

In addition to the above factual corrections, the Dissent to Denial's following five erroneous contentions about AEDPA's application must be addressed. Again, the most significant error is a claim never raised by the State: that § 2254(d)(2) limits the evidence that may be considered by the district court to that presented in state court, even if, as here, the district court did not abuse its discretion in holding an evidentiary hearing. That issue is *not* present in this appeal and, accordingly, was *not* considered.

## 1.

The Dissent to Denial at 1 charges the majority opinion with "send[ing] confusing signals" to district courts and state courts about AEDPA. Instead, a clear signal is transmitted: the deferential review mandated by AEDPA does not *automatically* equate with affirmance when the state court fails to make crucial findings to support its ruling. *See* **Miller-El v. Dretke**, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.").

11

Contrary to the assertion by the Dissent to Denial at 1, the district court did *not* conduct an evidentiary hearing "solely to reassess the state court's credibility choices". Rather, as described in the majority opinion, the hearing was held for several reasons. *Guidry*, 397 F.3d at 321-22, 324 (explaining that the district court's decision to hold an evidentiary hearing was based on: testimony of Guidry and four attorneys forming the basis of a constitutional claim that, "if true, might entitle Guidry to relief"; unexplained and unmentioned "gaps, inconsistencies, and conflicting testimony" in the trial court's factual findings and legal conclusions; and omissions of key credibility determinations).

Along those lines, the majority opinion does not, as the Dissent to Denial suggests, "*overturn*[] the [state court] findings relating to the voluntariness of Guidry's confession" because of the above-referenced gaps, omissions, and unexplained testimony. *Dsnt. to Denial* at 7 (emphasis added). Rather, the majority *affirms* the district court's finding that, pursuant to 28 U.S.C. § 2254(e)(1), the presumption of correctness accorded those state court findings was overcome by the requisite clear and convincing evidence.

3.

The Dissent to Denial at 5 maintains the district court *abused its discretion* by holding an evidentiary hearing. The decision to hold that hearing was made *after* the district court had considered the State's summary judgment motion and ruled, *within its discretion*, that a hearing was required. *Guidry*, 397 F.3d at 316-17, 322 (noting that, in general, the State did *not* contest a district court's having *discretion* under AEDPA to conduct an evidentiary hearing; instead, it claimed an abuse of that discretion).

With certain exceptions, 28 U.S.C. § 2254(e)(2) bars an evidentiary hearing if the factual basis of a claim was not presented in state court. Section 2254(e)(2), however, was *not* at issue here; at issue was § 2254(e)(1) (presumption of correctness to be accorded state court factual findings may be overcome by clear and convincing evidence). Indeed, *as the State conceded*, § 2254(e)(2) did *not* bar an evidentiary hearing; the factual basis was more than adequately presented in state court. *Guidry*, 397 F.3d at 323.

The district court's holding the hearing *was consistent* with our precedent. In other words, as held by the majority opinion, the district court did *not* abuse its discretion. *Id.* at 318-24. "Where a district court elects, in instances not barred by § 2254(e)(2), to hold an evidentiary hearing, the hearing may assist

13

the district court in ascertaining whether the state court reached an unreasonable determination under either § 2254(d)(1) [(unreasonable application of law)] or (d)(2) [(unreasonable determination of the facts)]." *Valdez v. Cockrell*, 274 F.3d 941, 952 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002); *see **Murphy v. Johnson***, 205 F.3d 809, 815 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000) (holding that Rule 8 of the Rules Governing Section 2254 Cases in the United States District Court vests district courts with *discretion* to conduct an evidentiary hearing, so long as it is *not* barred by § 2254(e)(2)); ***Clark v. Johnson***, 202 F.3d 760, 765 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000) (same).

Rather than citing to our court's precedent, the Dissent to Denial cites a decision from another circuit to support its abuse-of-discretion contention. ***Dsnt. to Denial*** at 6 (citing ***Villafuerte v. Stewart***, 111 F.3d 616, 633 (9th Cir. 1997), *cert. denied*, 522 U.S. 1079 (1998)). The Dissent to Denial fails to note, however, a more recent decision from that circuit: ***Taylor v. Maddox***, 366 F.3d 992 (9th Cir.), *cert. denied*, 125 S. Ct. 809 (2004). ***Taylor*** held a state court's failing to make findings on critical evidence negated the § 2254(e)(1) presumption of correctness and caused the fact finding to be unreasonable; because petitioner relied *only* on the state court record, the circuit court engaged in its own fact finding. ***Id.*** at 1007-09.

14

4.

Undeterred by the State's *concession* that the evidentiary hearing was *not* barred by § 2254(e)(2), the Dissent to Denial at 7 opines that the majority opinion "appears to broach the 'new evidence' prong of AEDPA Section 2254(e)(2)". This charge rests on Detective Roberts' changed testimony between the state and federal hearings. *Id.; Guidry*, 397 F.3d at 311-12, 317-18.

Again, except in limited circumstances, consideration of new factual claims is barred where "the applicant has failed to develop the factual basis of a claim in State court proceedings". 28 U.S.C. § 2254(e)(2). Detective Roberts was one of the State's key witnesses on the Fifth Amendment claim. His changing his state-court testimony at the federal evidentiary hearing does *not* fall within § 2254(e)(2)'s proscription. *On this record*, it is a stretch indeed to suggest § 2254(e)(2) might bar considering Detective Roberts' testimony at the district court evidentiary hearing because he changed his testimony from that given in state court when questioned on the same points.

5.

Finally, the Dissent to Denial's most serious error is maintaining the majority opinion violated § 2254(d)(2). Section 2254(e)(1), *not § 2254(d)(2)*, was at issue in this appeal. Section § 2254(d)(2) provides that habeas relief shall not be granted for any claim adjudicated on the merits in state court unless the

15

adjudication "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*". 28 U.S.C. § 2254(d)(2) (emphasis added). Its counterpart, § 2254(d)(1), provides that habeas relief shall not be granted for any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law". 28 U.S.C. § 2254(d)(1).

In claiming only the state court record could be considered, notwithstanding the district court evidentiary hearing, the Dissent to Denial at 5 relies on the "evidence presented in the State court proceeding" language of § 2254(d)(2). In support, it cites **Holland v. Jackson**, 124 S. Ct. 2736, 2737-38 (2004), which held that, after the district court granted the State's summary judgment motion, the circuit court erred *under § 2254(d)(1)* in deciding that the state court's application of Supreme Court ineffective-assistance-of-counsel precedent was unreasonable because the circuit court relied on "evidence not properly before the state court". In **Holland**, however, there was *no evidentiary hearing* in district court and § 2254(d)(1), *not § 2254(d)(2)*, was at issue. **Id.** ("Under the habeas statute, [a] statement [relied upon by petitioner and first presented in state court *after* habeas relief was denied] could have

16

been the subject of an evidentiary hearing by the District Court ... if the conditions prescribed by § 2254(e)(2) were met.").

More to the question at hand, the State did *not* raise this issue on appeal. **Guidry**, 397 F.3d at 325. Therefore, unless the issue is jurisdictional, it cannot be the basis for granting en banc review. This rule is so well established that citation to authority should not be necessary. *See, e.g.,* **United States v. Southland Mgmt. Corp.**, 326 F.3d 669, 677 (5th Cir. 2003) (en banc) (Jones, J., concurring) (regarding an issue presented for the first time to the en banc court in a court-ordered supplemental brief: "[W]e review only those issues presented to us; we do not craft new issues or search for them in the record .... In short, it is not for us to decide which issues should be presented, or to otherwise try the case for the parties". (quoting **United States v. Brace**, 145 F.3d 247, 255-56 (5th Cir.) (en banc), *cert. denied*, 525 U.S. 973 (1998))).

Because the State relied only on § 2254(e)(1), the scope and limitations of § 2254(d)(2) were *not* at issue on appeal. Indeed, the State's *not* raising a § 2254(d)(2) claim was noted in the majority opinion: "The State does not claim, in the alternative, that, even if the district court's [§ 2254](e)(1) ruling is correct, its [§2254](d)(2) ruling was incorrect. *Therefore, that question is not before us*". **Guidry**, 397 F.3d at 325 (emphasis

17

added).  In its Petition for Rehearing En Banc, the State does *not* challenge this conclusion.

As noted, the only exception that would allow our court *sua sponte* to consider the newly claimed strictures of § 2254(d)(2) would be if they were jurisdictional.  In **Miller-El v. Dretke**, 125 S. Ct. 2317 (2005), evidence added to the record *after* the federal habeas petition was filed (the State did *not* object; no evidentiary hearing was held) played a key role in habeas relief being granted by the Supreme Court.  **Id.** at 2335 n.15.  In challenging consideration of this supplemental evidence as being outside the state court record, and, therefore, claiming this violated the strictures of § 2254(d)(2), Justice Thomas maintained that those "strictures ... are not discretionary or waivable.  Through AEDPA, Congress sought to ensure that federal courts would defer to the judgments of state courts, not the wishes of litigants".  **Id.** at 2349 (Thomas, J., dissenting).  In taking this position, Justice Thomas suggested that those strictures may be jurisdictional.  **Id.** This position was *not*, however, adopted by the Court.  **Id.** at 2335 n.15.

In any event, the Dissent to Denial does *not* make a jurisdictional claim concerning § 2254(d)(2).  In short, its assertions about that section and its interplay with evidence developed in a district court evidentiary hearing must await

another appeal.  The majority opinion takes *no* position on this issue.

III.

A majority of our court has decided that this extremely fact-intensive matter will not receive en banc review.  The Dissent to Denial offers various reasons for granting such review, but they are simply inconsistent with the record for this proceeding, including the majority opinion's precedent-supported holdings. AEDPA's application to state death-penalty convictions is complicated and subject to differing views.  In this instance, however, the differences stated by the Dissent to Denial fall far short of demonstrating why our court should conduct en banc review, especially for the § 2254(d)(2) issue *never raised* by the State.

EDITH H. JONES, Circuit Judge, joined by JOLLY, SMITH, GARZA, DEMOSS, CLEMENT and OWEN, Circuit Judges, dissenting from the denial of rehearing en banc:

With due respect to the panel majority's diligence, we dissent from the court's denial of rehearing en banc in this case. The majority opinion sends confusing signals to the district courts and, equally unfortunately, to our brethren in the state courts as to the acceptable standards and procedures for federal habeas review. The majority opinion also stands in tension with Congress's goal, enacted through AEDPA, of enforcing comity and deference toward state court judgments of conviction.

The legal mischief in the panel's decision lies in (a) its approval of the district court's holding an evidentiary hearing solely to reassess the state court's credibility choices,[1] and (b) its refusal to credit the state courts' decisions based on the outcome of that federal hearing.[2]

---

[1]    The panel concisely summarizes the reasons for the district court's decision to conduct an evidentiary hearing:

> (1) testimony by Guidry and four lawyers — three of whom had served as assistant district attorneys — formed the basis for a constitutional claim that, if true, might entitle Guidry to relief; (2) gaps, inconsistencies, and conflicting testimony were not explained, or even mentioned, in the trial court's findings of fact and conclusions of law; and (3) these omissions reflected the trial court's failure to make crucial credibility assessments.

Guidry v. Dretke, 397 F.3d 306, 324 (5th Cir. 2005). The panel then approvingly states that "[t]hese quite legitimate concerns about conflicting evidence permitted the district court, within AEDPA's boundaries, to investigate those conflicts so that it could rule properly on the habeas petition." Id.

[2]    The panel states with approval that, pursuant to 28 U.S.C. § 2254(e)(1), "the district court did not accept the state court's determinations of fact because the trial court made no findings on considerable evidence critical to Guidry's claim." Guidry, 397 F.3d at 326.

20

**BACKGROUND**

The state courts were required to decide whether capital murder defendant Guidry requested advice of counsel during his interrogation, and whether the detectives told him, untruthfully, that his attorney said he should talk to them.[3] (Guidry confessed to murder for hire at the end of the questioning.) The state trial court held two pretrial hearings to ferret out the truth. Guidry and the detectives differed on what was said during the interrogation. Four attorneys testified concerning unofficial conversations with two of the detectives at a later date (the "in-chambers testimony"), which conversations could have left the impression that Detective Roberts may have lied about his contacts with Guidry's attorney.

The state trial court denied Guidry's motion to suppress the confession, stating in open court that the "[in-chambers] conversation was meaningless, except as it relate[d] to credibility." Guidry v. Dretke, 397 F.3d 306, 314 (5th Cir. 2005). The state court admitted Guidry's confession, in addition to substantial circumstantial evidence. After Guidry's conviction, the trial court wrote that:

> At all times Guidry advised [Detective] Tonry in Hoffman's presence that Guidry understood what his rights [were], never requested to have an attorney, never asked to call his attorney, never desired his attorney, never refused to discuss the case without his attorney. And,

---

[3]     A painstaking recitation of the facts appears in the majority opinion. Only a thumbnail sketch appears here.

> as a result, Guidry continued voluntarily discussing his complicity in the . . . murder for hire with Detectives Hoffman and Tonry. . . . [T]he statements were voluntarily made, not induced by force, threats or coercion, nor were any promises made, nor was anything done to induce [Guidry] or cause [Guidry] to make anything but a knowing and intentional waiver of his rights and a free and voluntary decision to confess.

(quoting the state trial court's findings of fact and conclusions of law). Id. at 314-15. The court made no written findings regarding the lawyers' testimony about the in-chambers conversation. Finding the trial court's express and implicit findings supported by the record and consistent with its determination that Guidry had not requested an attorney, the Texas Court of Criminal Appeals ("TCCA") affirmed the state court's suppression ruling.

The state habeas court, without an evidentiary hearing, held that Guidry failed to demonstrate a violation of his Fifth Amendment rights. The habeas court cited the 1996 hearing (specifically referencing the testimony of attorneys Gottlieb and Duer) but not the 1997 hearing at which attorneys Scott and Yarborough testified. The TCCA made no express findings reconciling the conflicting testimony or balancing the credibility of the witnesses. The TCCA affirmed the denial of habeas relief.

In response to Guidry's federal habeas petition, the district court conducted an evidentiary hearing after concluding that "[t]he state courts made no attempt to evaluate the veracity of the attorney testimony or analyze its implication in this case.

22

The state courts made no specific finding with respect to the inconsistent and contradictory testimony by the police officers." Guidry, 397 F.3d at 317. At the 2002 evidentiary hearing, all of the witnesses gave substantially the same, if not identical, testimony to that given at the state court hearings. However, a portion of Detective Roberts's 2002 testimony was different from his 1996 and 1997 testimony. In 2002, he testified, inter alia, that Guidry may have had an attorney, given the number of days he had been in jail, and that Guidry may have told him he had an attorney. Guidry, 397 F.3d at 317-18. Roberts continued to deny the ultimate contentions: that Guidry requested a consultation with counsel during his interrogation, Guidry, 397 F.3d at 332, n.2 (Garza, J., dissenting); and that Roberts lied to Guidry that his attorney advised Guidry to answer the questions.

The district court then reevaluated the witnesses' credibility de novo, found that the detectives violated Guidry's Fifth Amendment rights, and granted him habeas relief on that claim. The panel affirmed the district court.

1. **Granting a duplicative hearing.**

Contrary to the panel majority, we would hold that the district court abused its discretion in ordering a de novo evidentiary hearing solely to reassess the credibility of the witnesses to the suppression issues who had already testified in at least one of the two state court evidentiary hearings. The panel

23

majority's approval of this redundant hearing cannot be reconciled with AEDPA's requirement that the reasonableness of state court factfindings must be assessed "in light of the evidence presented in the state court proceedings."  28 U.S.C. 2254(d)(2).[4]  See also Holland v. Jackson, __ U.S. __, 124 S. Ct. 2736, 2737-38 (2004) ("whether a state court's decision was unreasonable must be assessed in light of the record the court had before it") (citing cases) (emphasis added).  The majority relies heavily on the federal court's discretion to conduct hearings, conferred by Federal Rule 8 of the Rules Governing Habeas Proceedings, but that rule must be subservient to AEDPA and Supreme Court caselaw.

If the majority is right, then a federal court could, in its discretion, order an entire case retried in order to decide whether the evidence was constitutionally sufficient to support the defendant's guilt, or it could retry the evidence on a Brady claim to judge the police officers' credibility for itself.  Any number of other examples could be advanced, but in all such cases, the federal court would be displaying the opposite of the deference to state court procedures and decisions from that mandated by AEDPA. Even before AEDPA was passed, where a state habeas petitioner "wanted the district court to hear the same evidence heard by the state court," it was held that, "[t]his is not a valid reason for

_____

[4]      See Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029 (2003) (Section 2254(d)(2) means that a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (emphasis added).

24

an evidentiary hearing in federal court." <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 633 (9th Cir. 1997) (pre-AEDPA case, citing <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 11-12, 112 S. Ct. 1715, 1721 (1992)).

Deference does not, of course, require the federal court always to approve state court credibility choices. <u>Miller-El</u>, 537 U.S. at 229, 123 S. Ct. at 1041. But a federal court has no warrant in AEDPA to retry historical facts simply to reassess witness credibility.[5] The tension with AEDPA is heightened in this case by the majority's reliance on the circumstance that Detective Roberts actually changed his testimony in the federal district court hearing. The panel thus appears to broach the "new evidence" prong of AEDPA Section 2254(e)(2),[6] even though Guidry failed to satisfy the demanding predicate for admission of new evidence in the federal proceeding.

## 2. Rejecting the State Court Factfindings.

Pursuant to AEDPA, the factfindings of state courts are entitled to a presumption of correctness unless they are proven incorrect by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, the majority overturns the findings relating to the voluntariness of Guidry's confession because it finds gaps in the

---

[5]    Here the federal district judge explicitly stated, "I need to be able <u>to make some credibility determinations on my own</u> and figure out what's going on. Now that I heard the evidence, <u>I guess it's time for me to look at basically the same issues again</u> but with a little more knowledge." <u>Guidry</u>, 397 F.3d at 333 (Garza, J., dissenting) (quoting the federal district court record) (emphasis added).

[6]    28 U.S.C. § 2254(e)(2) sets stringent limits on the factual development of a new claim in federal habeas.

witnesses' testimony and it believes that the state courts failed to recite, explicitly reconcile, and measure the relative credibility of all conflicting testimony. The majority holds that the district court need not accept the state court's findings "because the trial court made no findings on considerable evidence critical to Guidry's claim." 397 F.3d at 326. To the majority, these sins of omission — especially concerning the lawyers' testimony — apparently constitute clear and convincing evidence. The majority also holds that the state trial court's unexplained omission of findings "on evidence crucial to Guidry's claim, where the witnesses are apparently credible" brought into question whether the state courts reached a reasonable decision "in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

This is a close case on which reasonable federal judges can differ in result. But the majority's reasoning misses the mark. Our evaluation under AEDPA is not of the quality of the state courts' reasoning process, but of the reasonableness of the relevant factual determinations. If the state court's findings that Guidry did not express a desire to speak to his attorney and that he was not misled by the detectives are unreasonable in light of the attorneys' testimony, then so be it, but the state courts' failure to address the attorney testimony does not alone make the findings unreasonable.

The panel majority state over and over that their decision is fact-bound, and we hope it is regarded as such. The decisive importance attached by the majority to the state courts' sins of omission can hardly be reconciled with the precedent of this court and the Supreme Court. Adhering to principles of finality, comity and federalism, we have held that the presumption of correctness applies to explicit factual findings, Valdez v. Cockrell, 274 F.3d 941, 947 & n.11 (5th Cir. 2001), and "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." Pondexter, 346 F.3d at 148. Under AEDPA, federal courts review only the state courts' ultimate decision, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193-94 (5th Cir. 2001). The "parsing of the state habeas court's findings does not conform to the spirit or letter of AEDPA's [§ 2254(e)(1)] deferential standards." Pondexter, 346 F.3d at 142. Finally, the en banc court has held that "[i]t seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's decision, and not the written opinion explaining that decision." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

Granting deference to state courts' implicit and explicit historical factfindings predates AEDPA, moreover, and is in fact a bedrock principle of federal habeas jurisprudence. See, e.g., Marshall v. Lonberger, 459 U.S. 422, 433, 103 S. Ct. 843, 850 (1983) (Sixth Circuit's reassessment of respondent's state trial

27

court testimony was improper, whether undertaken because of state court's failure expressly to find credibility or out of federal court's desire to make a <u>de</u> <u>novo</u> review of the weight of the evidence); <u>Lavallee v. Delle Rose</u>, 410 U.S. 690, 93 S. Ct. 1203 (1973) (because it was clear that the trial court would have granted relief had it believed the defendant's testimony, its failure to do so was tantamount to an express finding against credibility).

Viewed in light of this guiding precedent, the panel majority's result may be justifiable, but the majority countenances an untenable district court procedure that unjustifiably undermines the letter and spirit of AEDPA. It is unsurprising, then, that the majority's analytical reasoning is anomalous. We respectfully dissent.